**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Timothy C. BENISH and Michael Gaich, Defendants.**

**Crim. No. 73–280.**

United States District Court,
W. D. Pennsylvania.

Feb. 26, 1975.

---

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Bertani, Myers & Makoski, Greensburg, Pa., for defendants.

## OPINION

DUMBAULD, District Judge.

Defendants, following a non-jury trial, were convicted of the charges contained in Count 2 of the Indictment (but acquitted under Count 1, relating to transactions on a different date). Count 2 charged violation of 21 U.S.C. § 841(a)(1) on or about August 1, 1973, in that defendants distributed 9,886 capsules of "Phendimetrazine, a Schedule III controlled substance." Motions in arrest of judgment, or for new trial, are pending.

The so-called "Comprehensive Drug Abuse Prevention and Control Act of 1970" established five classes of "controlled substances." Schedule III included drugs having less "potential for abuse" then those specified in Schedules I and II. 21 U.S.C. § 812(c) established an initial list of Schedule III drugs, and by 21 U.S.C. § 811(a) the Attorney Gen-

eral was empowered "by rule" to add to any Schedule "any drug or other substance" if he finds "that such drug or other substance has a potential for abuse." Such "rules" must be formulated pursuant to the rulemaking procedures of the Administrative Procedure Act (5 U.S.C. § 551 et seq.) which require due notice, hearing, and the like (5 U.S.C. § 553).

Defendants contend that the Attorney General must act personally in order to add a new substance, such as phendimetrazine, to Schedule III, relying upon United States v. Giordano, 416 U. S. 505, 510, 513–16, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). At the request of the Court this issue was briefed by the parties.

However, we are confirmed in our initial impression that *Giordano* is inapplicable here. That case related to the authorization of wire-tapping, which is commonly regarded as an improper "dirty business"[1] except under unusual conditions. Accordingly Congress insisted that such activities be engaged in only pursuant to "the mature judgment of a particular, responsible Department of Justice official." Hence 18 U.S.C. § 2516 specified that authority to permit wiretaps should be vested in a small circle of specifically enumerated officials, namely "the Attorney General, or any Assistant Attorney General specially designated by the Attorney General."

In the case at bar, however, we do not confront a situation involving delicate policy issues of law enforcement. We face a technical chemical problem. It would truly be incongruous to trust the personal professional opinion of any lawyer on such a question[2] rather than the judgment of a qualified hearing examiner in a unit established to deal with such technical questions. This is especially true when the action must be tak-

---

1. Either immoral, illegal, or unconstitutional, as the case may be. See Olmstead v. United States, 277 U.S. 438, 470, 48 S.Ct. 564, 72 L.Ed. 944 (1928); In re Marcus, 491 F.2d 901, 903–904 (C.A.1, 1974); Katz v. United States, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

2. Although judges must decide patent cases. See Henry J. Friendly, Federal Jurisdiction: A General View (1973) 156–57.

en "by rule" under the requirements of the Administrative Procedure Act. It would be strange if Congress had meant to require a Cabinet officer to devote his days to protracted hearings on technical questions, such as the proper amount of peanuts to be included as an ingredient of peanut butter,[3] or the potentiality for abuse of particular varieties of drugs (or even their safety or efficacy).

We therefore conclude that phendimetrazine is indeed a Schedule III controlled substance. It became such on June 15, 1973, pursuant to an order, dated June 12, 1973, signed by John E. Ingersoll, Director of the Bureau of Narcotics and Dangerous Drugs in the Department of Justice,[4] and published in the Federal Register of June 15, 1973 (Vol. 38 No. 115, pp. 15719–22).

Paragraph 1 of the provisions in the order of June 15, 1973, regarding effective dates, required persons distributing or proposing to distribute phendimentrazine to "obtain a registration to conduct that activity on or before August 1, 1973."

Paragraph 8 subjected to criminal liability any activity with said drug not authorized by, or in violation of, the Act of 1970, occurring after June 15, 1973, except that any person not registered "but who is entitled to registration"

may "continue to conduct normal business or professional practice with those substances between the date on which this order is published and the date on which he obtains the proper registration."

█ Defendants contend that this "grandfather clause" made their dealings in phendimetrazine legal up until August 1, 1973.

Disregarding complexities regarding computation of time,[5] it suffices to point out that the Indictment alleges that the offense occurred on or about August 1, 1973, and that the regulation required registration "on or before August 1, 1973." There is no evidence in the record either that defendants had obtained (or had even applied for) registration before August 2 succeeded August 1 in history. Nor is there any evidence that defendants during the period between June 15, 1973, and August 1, 1973, were "entitled to registration" permitting them to handle phendimetrazine.[6]

Defendants contend that it was the burden of the Government to establish their non-entitlement as part of the crime.

The Act of 1970 provides that a person distributing or proposing to distribute a controlled substance must obtain a registration, which authorizes them to engage in such activity. 21 U.S.C. §

---

3. Joseph C. Goulden, The Superlawyers (1972) 186–87; Richard A. Merrill and Earl M. Collier, Jr., " 'Like Mother Used to Make': An Analysis of FDA Food Standards of Identity," 74 Col.L.R. (May, 1974) 561, 585–91; Corn Products Co. v. Dept. of H. E.W., 427 F.2d 511 (C.A. 3, 1970). The administrative proceedings began in 1959 and ended in 1968.

4. The Director's authority is established by 21 U.S.C. § 871, 28 U.S.C. § 510, Reorganization plan No. 2 of 1973 (28 U.S.C. § 509, pocket part) ; and Section 0.100 of Title 18 CFR, which provides:
    § 0.100 General Functions
    Subject to the general supervision of the Attorney General, and under the direction of the Deputy Attorney General, the following described matters are assigned to, and shall be conducted, handled, or super-

vised by, the Administrator of the Drug Enforcement Administration:
    (a) Functions vested in the Attorney General by sections 1 and 2 of Reorganization Plan No. 1 of 1968.
    (b) Functions vested in the Attorney General by the Comprehensive Drug Abuse Prevention and Control Act of 1970.
    (c) Functions vested in the Attorney General by section 1 of Reorganization Plan No. 2 of 1973 and not otherwise specifically assigned.

5. See Rule 45(a) F.R.Cr.P., and the common law rule that fractions of a day are to be disregarded.

6. By the time of trial in 1974 the existence vel non of registration by August 1, 1973, should have been easy to prove.

822. Knowingly and intentionally to distribute a controlled substance except as authorized by the Act is made criminal by 21 U.S.C. § 841(a).

It is provided in 21 U.S.C. § 885(a)(1) that the Government need not negative any statutory exemption or exception in any indictment or in any trial, but that "the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit."

It will be noted that this is a purely procedural presumption. It places on the defendants (who are presumably most familiar with and best able to demonstrate their own qualifications and efforts to obtain registration) to go forward with the evidence. It does not establish any *irrebuttable presumption*, which might be regarded as a substantive rule of law like the "parol evidence rule."

Hence this fully rebuttable and procedural presumption is not subject to the due process condemnation of the types of presumption involved in the cases on which defendants rely: Tot v. United States, 319 U.S. 463, 466–68, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); Leary v. United States, 395 U.S. 6, 36–37, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Cf. Turner v. United States, 396 U.S. 398, 408, 423, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). See also "The Irrebuttable Presumption Doctrine in the Supreme Court", 87 Harv.L.R. (May, 1974) 1534–56.

Accordingly, defendants' motions are overruled, and they are directed to present themselves for sentence in due course.

### ORDER

And now, this 26th day of February, 1975, upon consideration of defendants' motions in arrest of judgment and for new trial, for the reasons set forth in the foregoing opinion,

It is ordered that said motions be and they hereby are denied and overruled, and defendants are directed to present themselves in due course for sentence.