UNITED STATES of America,
Plaintiff-Appellee,

v.

Ray ROYA, Defendant-Appellant.

No. 77–1401.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 4, 1977.

Decided April 14, 1978.

Donald N. Novelle, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Terry A. Zitek, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and PELL, Circuit Judges, and CAMPBELL, Senior District Judge.*

PELL, Circuit Judge.

Appellant, Dr. Ray Roya, was convicted after a bench trial on all counts of a 24 count indictment which charged him with dispensing and attempting to dispense

---

* The Honorable William J. Campbell of the Northern District of Illinois is sitting by designation.

Schedule II controlled substances[1] from February 21, 1975 to April 26, 1975, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[2]

The Government's evidence included the testimony of eight agents from the Illinois Bureau of Investigation who, over a 63-day period, obtained 24 prescriptions from Roya for either Preludin or Tuinal. The testimony was similar for each of the counts, so we will summarize the testimony of one of the agents to provide the flavor of Dr. Roya's practice insofar as it related to his contacts with the agents.

On February 21, 1975, agent Paula Riccio telephoned Roya for an appointment, and then went to his office. The office consisted of a large waiting room with 20 to 25 chairs for patients. While she waited, she observed other people enter Roya's inner office and emerge five to ten minutes later holding a white piece of paper. When she entered the inner office for her appointment she observed no examining table or weight scale. After a brief conversation she told Roya that she wanted a prescription for Preludin. She also said that her boyfriend would share the Preludin with her and that he would pay for the prescription. She did not indicate to him that she desired to reduce her weight, a recognized legitimate medical use for Preludin. Roya asked her no questions about her medical history, did not take her blood pressure, and did not listen to her heartbeat; he conducted no physical examination. He wrote and gave her a prescription for 30 Preludin tablets (Count 5), a normal monthly supply. She paid him $10.00 and left.

Three days later, she returned and told him that she had shared the Preludin tablets with her boyfriend over the weekend and had used all 30 tablets. She asked for another prescription. He told her he could not write another prescription in her own name because the authorities were closely monitoring usage of the drug. He agreed instead to write a prescription in the name of her boyfriend, Steve Miller (Count 6). Riccio paid $10.00 for the prescription and left. During the interview, Roya did not refer to a patient file, again asked no questions about her medical history, and again failed to give her a physical examination. Obviously, he made no clinical determination as to Steve Miller.

On March 1, 1975, Riccio and agent Steve Miller visited Roya's office. Miller requested a prescription for Tuinal. Although Miller did not indicate that he was having difficulty sleeping, Roya wrote and gave a prescription to him for 30 Tuinal capsules (Count 1). He asked Miller no questions about his medical history and conducted no physical examination. Riccio asked for another Preludin prescription. She was given the prescription after she gave Roya the name of someone over 30 years of age to place on the prescription. She chose "Joyce Jones" (Count 8). They paid Roya $20.00 for the two prescriptions and left.

In this appeal, Roya argues that the district court erred in not dismissing the indictment in its entirety or at least as to the counts dealing with Preludin. He also contends that the Government's evidence was insufficient to sustain his conviction on Counts 1, 2, 3, 4, 5, 7, 9, 10, 11, 14, 15, 20, 21, and 22.

## I. THE INDICTMENT

Roya argues that the indictment was vague, uncertain, and failed to inform him of the nature and cause of the accusations

1. The controlled substances were Preludin, a brand name for phenmetrazine, and Tuinal, a brand name for sodium amobarbital and sodium secobarbital. We will refer to these substances by their commercial names.

2. Section 841(a)(1) provides:
 Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufac-

ture, distribute, or dispense, a controlled substance.
Section 846 provides:
Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

against him with the certainty required by law. Specifically, he argues that the indictment should have been dismissed because (1) it failed to cite the regulation, the violation of which was the essence of the charge against him, (2) it failed to state an element of the offense which was included in the regulation, and (3) it failed to state the names and addresses of the persons to whom the controlled substances were dispensed or attempted to be dispensed.

Appellant's first argument to support the vagueness of the indictment is that each count fails to cite the regulation which proscribed the conduct for which he was charged. The 24 count indictment consisted of four counts charging him with violations of 21 U.S.C. § 841(a)(1) and 20 counts charging him with violations of 21 U.S.C. §§ 841(a)(1) and 846.[3] All 24 counts stated either that he dispensed or that he attempted to dispense controlled substances "pursuant to a prescription not written in the course of professional practice . . . ." Neither § 841(a)(1) nor § 846, however, includes or refers to this phrase. Appellant argues that this language of the indictment indicated that the conduct for which he was indicted and convicted was that proscribed in part by 21 C.F.R. § 1306.04(a).[4] That regulation provides in pertinent part:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting *in the usual course of his professional practice* . . . . An order purporting to be a prescription issued not *in the usual course of professional treatment* . . . is not a prescription within the meaning and intent of section 309 . . . .[5] and the . . . person issuing it, shall be subject to the penalties provided for violations of the law relating to controlled substances.

[Emphasis added.] Because the indictment failed to include a reference to this regulation, appellant argues that the indictment failed to inform him with sufficient clarity of the charges against him.

It is true that the disputed language tracks some of the language in the regulation. This regulation, however, has been held by this court in *United States v. Green,* 511 F.2d 1062 (7th Cir. 1975), not to broaden improperly § 841 in its applicability to a practitioner. In *Green,* which was written the better part of a year prior to the filing of the indictment in the present case, there was a challenge to the inclusion of reference to the regulation in the indictment. Here the converse is true proving perhaps, if nothing else, the ingenuity of defense counsel.

In any event, looking at the indictment here involved we note that it clearly stated the essential elements of the offense and that the disputed language merely clarified the grand jury's position that the ac-

---

**3.** The first four counts of the indictment read as follows:

> On or about . . ., at Chicago, in the Northern District of Illinois, Eastern Division, RAY ROYA, defendant herein, knowingly and intentionally dispensed 30 Preludin [or Tuinal] tablets (phenmetrazine), a Schedule II Controlled Substance pursuant to a prescription not written in the course of professional practice; In violation of Title 21, United States Code, Section 841(a)(1).

Counts Five through 24 read as follows:

> On or about . . ., at Chicago, in the Northern District of Illinois, Eastern Division, RAY ROYA, defendant herein, knowingly and intentionally attempted to dispense 30 Tuinal [or Preludin] capsules (sodium amobarbital and sodium secobarbital), a Schedule II Controlled Substance pursuant to a prescription not written in the course of professional practice, in violation of Title 21, United

States Code, Section 841(a)(1); In violation of Title 21, United States Code, Section 846.

**4.** At the time the indictment was issued the regulation was designated 21 C.F.R. § 306.04(a) (1973). The most recent regulations designate it 21 C.F.R. § 1306.04(a) (1975).

**5.** Section 309, or more fully, Pub.L. 91–513, Title II, § 309, is codified as 21 U.S.C. § 829. Germane to the present issue, § 829(a) reads in part as follows:

> Except when dispensed directly by a practitioner, other than a pharmacist, to an ultimate user, no controlled substance in schedule II, which is a prescription drug as determined under the Federal Food, Drug, and Cosmetic Act, may be dispensed without the written prescription of a practitioner . . . .

cused did not fit within an exemption to the charged offense. We have difficulty comprehending a claim that because there was not specific reference by citation to the regulation when there was language from that regulation in the indictment, there would be a failure to inform the defendant with clarity of the charge against him. The clear import of the disputed language was that the defendant could not escape conviction under § 841(a)(1) by use of § 829(a).

■ In any event, the disputed language, in our opinion, was not essential to a properly drawn indictment. An indictment founded on a general provision of a statute need not negative an exception made by a proviso or other distinct clause, whether in the same section or elsewhere. *McKelvey v. United States,* 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301 (1922). Addition of such language, therefore, should not render an indictment defective. *United States v. DiPietroantonio,* 289 F.2d 122, 124 (2d Cir. 1961). Finally, on this phase of the case, there may well have been some chronological significance in the fact that in a unanimous Supreme Court decision, *United States v. Moore,* 423 U.S. 122, 124, 96 S.Ct. 335, 337, 46 L.Ed.2d 333 (1975), the Court stated, "We . . . hold that registered physicians can be prosecuted under § 841 when their activities fall outside the usual course of professional practice." *Moore* was decided on December 9, 1975. The present indictment was filed on December 16, 1975.

■■ The appellant also argues that the indictment should have been dismissed because it failed to contain the essential element of the regulation that the dispensing was without "a legitimate medical purpose." Because of our holding that neither citation to the regulation nor inclusion of its language was necessary to charge the defendant with a violation of §§ 841 and 846, we reject this corollary contention. Essentially, putting aside the verbiage claims, the issue remains whether the indictment properly charged this physician, in a manner making the charge sufficiently clear to him, that he had dispensed in a

manner not exempted under the statute. We are satisfied that it did. Because of our holding, we find no merit in the additional contention in the present area that the district court incorrectly denied his motion for a bill of particulars seeking an explanation of the phrase "not written in the course of professional practice." We later herein will discuss the applicable standards; it suffices now to say that the denial of that motion cannot be said to have rendered the defendant unable to prepare a defense adequately, to have caused him surprise at trial, or to have placed him in double jeopardy.

■ Roya also argues that the district court should have dismissed the indictment because of its failure to state in each count the names and addresses of persons to whom he allegedly dispensed or attempted to dispense controlled substances. The test is whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial. *United States v. Jeffers,* 532 F.2d 1101, 1112–13 (7th Cir. 1976), *aff'd in part, vacated in part on other grounds sub nom. Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). Each count of the 24 count indictment in the instant case clearly set forth the elements of the offense charged, the time and place of the defendant's conduct which violated that offense, and citation to the statute or statutes allegedly violated. This information, we hold, was sufficient to apprise the defendant of the charges against him and enable him to prepare for trial.

■ Roya here also complains of the denial of his motion for a bill of particulars as to the names and addresses. The denial of a motion for a bill of particulars does not constitute an abuse of discretion "unless the deprivation of the information sought leads to the defendant's inability adequately to prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." *United States v. Addonizio,* 451 F.2d 49, 64 (3d Cir. 1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972); *see also United States v. Micele,* 327 F.2d 222, 226

(7th Cir. 1964), *cert. denied,* 377 U.S. 952, 84 S.Ct. 1627, 12 L.Ed.2d 496; Wright, Federal Practice and Procedure: Criminal § 129 at 283 (1969).

The record indicates that the Government provided the defendant with Illinois Bureau of Investigation reports pursuant to Fed.R. Crim.P. 16 and Local District Court Rule 2.04. These reports listed the names of the agents involved, the time and place of the transactions, and conversations which took place during the course of the transactions. These reports covered all 24 counts of the indictment although they did not link specific agents to specific counts, the information defendant requested in his motion. ■ In our opinion, the deprivation of this information linking specific agents to specific counts did not lead to defendant's inability to prepare his case adequately, or cause him surprise at trial, or place him in risk of double jeopardy. *See United States v. Rimanich,* 422 F.2d 817 (7th Cir. 1970); *United States v. Cummings,* 49 F.R.D. 160, 161 (S.D.N.Y.1969); *United States v. Brevard,* 27 F.R.D. 250, 251 (S.D.N.Y.1961).

Appellant next challenges the sufficiency of the indictment on the ground that the Attorney General's addition and reclassification of Tuinal and Preludin as Schedule II controlled substances was void because the Attorney General's authority, although derived from the statute, 21 U.S.C. § 811, was an unconstitutional delegation of authority under the separation of powers doctrine. This argument lacks any merit and borders on the frivolous. ■ It is well-established constitutional doctrine that Congress may enact legislation which prescribes essential standards and basic legislative policy within which a designated administrator may promulgate rules and regulations. The standards need only be "sufficiently definite and precise to enable Congress, the courts and the public to ascertain whether the Administrator . . . has conformed to those standards." *Yakus v. United States,* 321 U.S. 414, 426, 64 S.Ct. 660,

668, 88 L.Ed. 834 (1944). The parameters within which the Attorney General may exercise his authority to add and reclassify drugs to the various statutory schedules are narrow. He must, in making his findings, consider: (1) its actual or relative potential for abuse; (2) scientific evidence of its pharmacological effect, if known; (3) the state of current scientific knowledge regarding the drug or other substance; (4) its history and current pattern of abuse; (5) the scope, duration, and significance of abuse; (6) what, if any, risk there is to the public health; (7) its psychic or physiological dependence liability; (8) whether the substance is an immediate precursor of a substance already controlled under this subchapter. 21 U.S.C. § 811(c). In addition he must request from the Secretary of Health, Education, and Welfare scientific and medical recommendations with respect to the drug. 21 U.S.C. § 811(a)–(c). In light of these detailed guidelines provided by Congress, we find no merit in appellant's assertion that this authority was unconstitutionally delegated. *See United States v. Pastor,* 557 F.2d 930, 939–41 (2d Cir. 1977); *United States v. Piatti,* 416 F.Supp. 1202, 1205 (E.D.N.Y.1976). ■ Alternatively, appellant argues that even if the delegation was valid, the fourteen counts of the indictment that involved Preludin (phenmetrazine) were invalid because the Attorney General failed to make the requisite findings when he transferred it from Schedule III to Schedule II. The findings necessary for such a transfer are: (1) the drug or other substance has a high potential for abuse; (2) the drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions; and (3) abuse of the drug or other substance may lead to severe psychological dependence. 21 U.S.C. § 812(b).

On July 7, 1971, the Director of the Bureau of Narcotics and Dangerous Drugs, on behalf of the Attorney General,[6] made findings that amphetamines and methampheta-

---

**6.** The Attorney General is not required to act personally to add a new drug to Schedule III.

*United States v. Benish,* 389 F.Supp. 557, 558 (W.D.Pa.1975), *aff'd,* 523 F.2d 1051 (3d Cir.

mine had a high potential for abuse, had an accepted, limited medical use, and that their abuse could lead to severe psychological or physical dependence. 36 Fed.Reg. 12734, 12735 (July 7, 1971). The Director's report on Preludin, published on October 28, 1971, and effecting the transfer of Preludin from Schedule III to II, stated in pertinent part:

> [I]n view of the order transferring amphetamines and methamphetamine to schedule II published in the Federal Register of July 7, 1971 (36 F.R. 12734), and the resulting strict production and distribution controls imposed upon amphetamines and methamphetamine by this transfer, finds that persons disposed to abuse amphetamines and methamphetamine now may direct their attention to methylphenidate and phenmetrazine, drugs which presently are not known to be the subject of substantial abuse in the United States. Further, there is no evidence to indicate that there is any abuse of methylphenidate and phenmetrazine when administered with proper medical supervision.

36 Fed.Reg. 20686 (Oct. 28, 1971). [Emphasis added.] We are satisfied that this language indicates that the Director incorporated the findings of July 7, 1971 into his decision to transfer Preludin to Schedule II, and thus made the requisite factual findings. Therefore, we reject the premise of appellant's argument and accordingly do not find the fourteen counts concerning Preludin to be invalid.

## II. SUFFICIENCY OF THE EVIDENCE

■■■■ Roya challenges the sufficiency of the evidence for the first four counts on the ground that the Government failed to prove that he "dispensed" controlled substances as required by the statute.[7] The definitional section of the statute defines "dispense" as:

> to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling, or compounding necessary to prepare the substance for such delivery.

21 U.S.C. § 802(10). At trial, the Government proved that Roya wrote prescriptions for controlled substances. On appeal, Roya avers that the statute requires more than issuing a patient a prescription. We reject this narrow construction as inconsistent with the definitional section of the statute read as a whole. Section 802(10) provides that "dispense" means to "deliver." Section 802(8) provides that "deliver" means actual, constructive, or attempted transfer. Thus, "dispense" includes constructive transfers which encompass Roy's actions of issuing written prescriptions to patients entitling them to purchase the substances from a pharmacist. The Third Circuit employed this reasoning in the course of upholding a conviction of a physician for violation of 21 U.S.C. § 841(a)(1). The physician issued prescriptions for Schedule II controlled substances, but the prescriptions were never filled. The Third Circuit held that the physician "dispensed" controlled substances by issuing the prescriptions. The court stated that:

> a prescription for a substance cannot be regarded as less than the constructive or attempted transfer of the substance itself, since a prescription is the written representation of the drug and enables its possessor to claim physical custody and control over the drug prescribed.

*United States v. Tighe*, 551 F.2d 18, 20 (3d Cir. 1977), *cert. denied*, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977).

■■■■ Appellant challenges his conviction on Counts 5, 7, 9, 10, 11, 14, 15, 20, 21, and 22 on the ground of insufficiency of the evidence. He argues that the Government's evidence was insufficient to prove that he dispensed the controlled substance for other than a legitimate medical purpose

---

1975), *cert. denied*, 424 U.S. 954, 96 S.Ct. 1428, 47 L.Ed.2d 359 (1976).

**7.** The remaining 20 counts charged appellant with an attempt to dispense. Appellant challenged ten of these counts on the ground of insufficiency of evidence. These arguments will be addressed in the text *infra*.

and not in the usual course of his professional practice. We note at the outset that we must sustain the fact-finder's verdict on appeal if, viewing the evidence in a light most favorable to the Government, a rational trier of fact could have found from the evidence and inferences drawn therefrom that the defendant was guilty beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Faulkner,* 360 F.2d 880, 881 (7th Cir. 1966).

 We find the evidence clearly sufficient under our standard of review to sustain the conviction. The agents for whom appellant prescribed the controlled substance all testified that appellant did not ask for a medical history during any of the interviews; nor did he conduct a single physical examination of any of the agents. Furthermore, the testimony of expert witnesses indicated that these actions were outside the course of professional practice.

For the reasons stated herein, we affirm the conviction on all counts.

AFFIRMED.