**UNITED STATES of America**

v.

**William S. POLAN, George H. Wehner, Sr.,**

**William S. Polan, Appellant.**

**No. 91–3683.**

United States Court of Appeals, Third Circuit.

Argued May 12, 1992.

Decided July 29, 1992.

---

* Hon. Collins J. Seitz, Senior United States Circuit Judge, was limited to voting for panel rehearing.

Thomas S. White, Federal Public Defender, W. Penn Hackney, First Asst. Public Defender, Karen Sirianni Gerlach (Argued), Asst. Federal Public Defender, Pittsburgh, Pa., for appellant, William S. Polan.

Thomas W. Corbett, Jr., U.S. Atty., Constance M. Bowden (Argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee, U.S.

Before STAPLETON, ALITO and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALITO, Circuit Judge:

The defendant, a physician, was indicted and convicted for one count of conspiracy to distribute oxycodone, a schedule II controlled substance, in violation of 21 U.S.C. § 846, and 31 counts of distributing oxycodone, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). The evidence showed that George Wehner, who testified for the prosecution, periodically sent individuals to the defendant's residence and paid the defendant for purportedly examining them; that the defendant gave these individuals prescriptions for oxycodone in the form of percocet tablets; that these individuals

subsequently turned over the tablets to Wehner; that Wehner then sold the tablets or bartered them for sexual favors; and that the defendant was aware of this scheme.

The defendant contends that the substantive counts of the indictment were defective, that several prospective jurors should have been dismissed for cause, that his trial did not commence within the time required by the Speedy Trial Act, that disclosure of Wehner's medical records should have been ordered, and that the jury instruction on reasonable doubt was incorrect. We affirm.

## I.

We turn first to the defendant's argument that the substantive counts of the indictment failed to charge an essential element of the offense of illegal drug distribution by a physician, i.e., that he lacked a legitimate medical reason for writing the prescriptions. The defendant did not raise this alleged defect before trial, but a motion to dismiss an indictment for failure to charge an offense may be made at any time. Fed.R.Crim.P. 12(b)(2). We have written, however, that " 'indictments which are tardily challenged are liberally construed in favor of validity.' " *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir.1979), quoting *United States v. King*, 587 F.2d 956, 963 (9th Cir.1978). We hold that the challenged counts were not defective.

▇ An indictment must charge every essential element of the offense. *See Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962). It has long been established, however, that an indictment need not negative a statutory exception. In *McKelvey v. United States*, 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301 (1923), the Supreme Court wrote:

By repeated decisions it has come to be a settled rule in this jurisdiction that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it.

This rule is codified in 21 U.S.C. § 885(a)(1), which states that "in any complaint, information, or indictment" under subchapter I of Title 21 of the United States Code (21 U.S.C. §§ 801–904), "[i]t shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter."

▇ The substantive counts at issue here were based on 21 U.S.C. § 841(a)(1), which is part of this subchapter. Under 21 U.S.C. § 841(a)(1), it is unlawful, "[e]xcept as authorized by this subchapter," for " 'any person' knowingly or intentionally ... to ... distribute ... a controlled substance." The Supreme Court has held that drug distribution by a physician violates this provision and does not fall within the language "[e]xcept as authorized by this subchapter" when the distribution occurs outside the usual course of professional practice. *United States v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1976). Thus, the offense of illegal drug distribution by a physician contains three essential elements: the physician must (1) knowingly or intentionally (2) distribute (3) a controlled substance. The offense also includes an exception for drug distribution by a physician in the usual course of professional practice.

The substantive counts at issue here charged all three of the elements noted above. Each of these counts charged that the defendant, on a particular occasion, "did knowingly, intentionally and unlawfully distribute" oxycodone. While these counts did not expressly allege that the drug distribution was not authorized under subchapter I of Title 21 of the United States Code or that the distribution was not done in the usual course of the defendant's professional practice, such allegations are not required under the pleading rule set out in 21 U.S.C. § 885(a)(1) and *McKelvey*.

Furthermore, we believe that these counts, particularly when " 'liberally construed in favor of validity' " (*Wander*, 601 F.2d at 1259, quoting *King*, 587 F.2d at 963), adequately alleged that the distributions were not "authorized" under the federal drug laws and did not occur in the course of the defendant's professional practice. As previously noted, these counts charged that the defendant acted "unlawfully." In addition, these counts employed the term "distribute," and under the statutory definitions a physician cannot "distribute" drugs by means of a prescription unless the prescription was unlawful. Under 21 U.S.C. § 802(11), the term "distribute" means "to deliver (other than by administering or dispensing) a controlled substance." Under 21 U.S.C. § 802(10), the term "dispense" means to "deliver a controlled substance to an ultimate user ... by, or pursuant to the lawful order of, a practitioner." Thus, the delivery of a drug pursuant to prescription cannot constitute distribution unless the prescription was not a "lawful order."

The defendant relies on *United States v. King*, 587 F.2d 956, 962–65 (9th Cir.1978), and *United States v. Outler*, 659 F.2d 1306, 1308–11 (5th Cir.1981), in which indictments of physicians were found to be defective because the indictments did not charge that the physicians lacked authorization or a legitimate medical reason for distributing or dispensing drugs. However, in both of those cases, unlike this case, the defendants raised the alleged defect before trial, and in *King* the indictment did not allege that the defendant acted "unlawfully." Thus *King* and *Outler* are distinguishable from the present case.

More important, neither the majority opinion in *King* nor the opinion in *Outler* even mentions 21 U.S.C. § 885(a)(1), which is clearly controlling unless its application in this situation is unconstitutional. We therefore find these opinions unpersuasive.[1] Instead, we agree with *United States v. Roya*, 574 F.2d 386 (7th Cir.), *cert. denied*, 439 U.S. 857, 99 S.Ct. 172, 58 L.Ed.2d 165 (1978), with Judge Choy's opinion in *King*, 587 F.2d at 966 (Choy, J., concurring in part and dissenting in part), and with prior decisions holding that a physician's lack of authorization to distribute drugs did not have to be alleged in an indictment under the statutory predecessor of 21 U.S.C. § 841(a)(1). *See, e.g., United States v. Collier*, 478 F.2d 268, 273 (5th Cir.1973); *United States v. Rowlette*, 397 F.2d 475, 479 (7th Cir.1968). *See also United States v. Benish*, 389 F.Supp. 557 (W.D.Pa.1975), *aff'd*, 523 F.2d 1050, 1051 (3d Cir.) (unpublished opinion), *cert. denied*, 424 U.S. 954, 96 S.Ct. 1428, 47 L.Ed.2d 359 (1975).

---

**1.** In *King*, the majority simply stated without elaboration that a physician's lack of authorization is "an essential element of the offense."

In *Outler*, the court, while failing to mention 21 U.S.C. § 885(a)(1), did refer to *McKelvey*, and the court attempted to escape the *McKelvey* pleading rule on the ground that a physician's indictment for illegal drug distribution is one of the "rare instances" in which "an exception can be so necessary to a true definition of the offense that the elements of the crime are not fully stated without the exception." 659 F.2d at 1310. Apparently the court reasoned that unless such an indictment is required to contain an allegation that the physician acted without a legitimate medical reason, a physician could be indicted (although presumably not convicted) whenever he or she lawfully prescribes a controlled substance. *See id.* at 1309 n. 3.

We are not persuaded by this argument because essentially the same argument can be made with respect to every statutory exception, and thus this argument would swallow up the rule endorsed in *McKelvey*. If a statutory exception need not be negatived in an indictment, then at least in theory any defendant falling within the exception could be indicted even though it is perfectly clear that the defendant acted lawfully. In *McKelvey*, for example, the statute made it a crime to obstruct free passage through public lands subject to settlement or entry under the public land laws, but the provision contained a proviso excluding improved or occupied lands from this prohibition. By holding that an indictment under this law need not negative the proviso, the Supreme Court made it possible in theory for an innocent homesteader to be indicted for fencing in his own farm. Thus, unless *McKelvey* is no longer good law—and no Supreme Court decision so holds or implies—we do not think we can refuse to follow 21 U.S.C. § 885(a)(1) simply because it could in theory result in abusive indictments of physicians—an eventuality that apparently has not occurred in the 22 years since this provision was enacted.

## II.

The defendant next argues that the district court erred in refusing to strike for cause three prospective jurors who revealed during voir dire that either they or members of their families had suffered as a result of drug abuse. We have reviewed the record of the voir dire, and we find no basis for reversing the defendant's conviction.

A juror is impartial if he or she can lay aside any previously formed "impression or opinion as to the merits of the case" and can "render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). Determining whether a prospective juror can render a fair verdict lies "peculiarly within a trial judge's province." *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985). Thus, a trial judge's decision concerning a motion to dismiss a juror for cause may be reversed only if there has been an abuse of discretion. *United States v. Salamone*, 800 F.2d 1216, 1226 (3d Cir.1986).

Here, the district court permitted defense counsel to conduct a probing voir dire of the three prospective jurors in question, and although these prospective jurors revealed that either they or members of their families had suffered as a result of drug abuse, each juror stated that he or she could be fair and impartial. The trial judge, who witnessed the questioning of these prospective jurors, credited these assurances, and we have no basis for concluding that the trial judge's assessment constituted an abuse of discretion.[2]

## III.

The defendant argues that the trial judge should have dismissed the indictment based on an alleged violation of the Speedy Trial Act. The district court denied this motion based on the exclusion of 78 days of delay pursuant to 18 U.S.C. § 3161(h)(1)(F) because during this time the court was awaiting the completion of the transcript of the hearing on the defendant's pretrial motion to suppress evidence. Under the reasoning of *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), we hold that this time was properly excluded and that consequently no violation of the Speedy Trial Act occurred.

Under 18 U.S.C. § 3161(h)(1)(F), a court must exclude "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." In *Henderson*, the Supreme Court held that this provision excludes all time between the filing of and the hearing on a motion, whether or not that hearing was prompt. 476 U.S. at 326–330, 106 S.Ct. at 1874–77. The Court held that this provision also "excludes time after a hearing has been held where a district court awaits additional filings from the parties that are needed for proper disposition of the motion." *Id.* at 331, 106 S.Ct. at 1877. The Court reasoned as follows (*id.*):

> The provisions of the Act are designed to exclude all time that is consumed in placing the trial court in a position to dispose of a motion.... District courts often find it impossible to resolve motions on which hearings have been held until the parties have submitted post-hearing briefs or additional factual materials, especially where a motion presents complicated issues. It would not have been

---

**2.** One juror revealed that one of his brothers had died of a drug overdose and another brother had served a lengthy term of imprisonment for drug offenses. Nevertheless, this juror repeatedly assured the court that he thought he could be fair and impartial.

The second juror revealed that she had become dependent upon tranquilizers after experiencing a family tragedy. She assured the court, however, that she would base her vote "totally on the evidence that was shown, not on my past." She also stated that her experience would not make her more inclined to vote for a verdict of guilty.

The third prospective juror revealed that he had gone "through the court system with one of [his] sons" as a result of drug and alcohol abuse, but he assured the court that he felt he could put aside his personal experiences and render a verdict based on the evidence and testimony in the case. He also assured the court that he would abide by the presumption of innocence and honestly and fully follow the court's instructions.

sensible for Congress to exclude automatically all the time prior to the hearing on a motion and 30 days after the motion is taken under advisement, but not the time during which the court remains unable to rule because it is awaiting the submission by counsel of additional materials.

By this same reasoning, we hold that 18 U.S.C. § 3161(h)(1)(F) excludes a post-hearing period during which the district court is awaiting preparation of a transcript of the hearing. District courts often find it necessary to review the transcript of a hearing on a pretrial motion in order to rule on the motion. Indeed, we suspect that such transcripts are often more important than the posthearing submissions by counsel that were discussed in *Henderson*. Therefore, we believe that 18 U.S.C. § 3161(h)(1)(F) must be interpreted to require the exclusion of a period after a pretrial motion during which the court is awaiting the preparation of a transcript needed to rule on the motion. As the government observes (Appellee's Brief at 36), "[i]f the district court had ordered the parties to submit the transcript in this case, there appears to be no question that the time period would be excludable under [*Henderson.*] That the district court ordered the transcript, on its own motion, should not alter the result." [3]

## IV.

The defendant contends that the district court erred in refusing to turn over George Wehner's psychiatric records, which the defendant attempted to subpoena from Wehner during his cross-examination. Wehner's attorney resisted the subpoena, and the district court ordered that the records be produced *in camera*. The court then examined the records, concluded that they contained no exculpatory information, and consequently refused to turn them over to the defense. We hold that the district court did not err and that, even if

the ruling had been incorrect, it was harmless beyond a reasonable doubt.

Prior decisions of this court have held that the Constitution provides qualified protection for medical records sought by search warrant or subpoena. *In re Search Warrant (Sealed)*, 810 F.2d 67, 71–72 (3d Cir.1987); *United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 577 (3d Cir.1980). This court has recognized, however, that this protection is not absolute and that an individual's privacy interest in medical records must be balanced against the legitimate interest of others in obtaining disclosure. *In re Search Warrant (Sealed)*, 810 F.2d at 71–72. In this case, however, the defendant's need for disclosure was weak. During cross-examination of Wehner, defense counsel explored Wehner's psychiatric problems effectively and in some depth. Access to Wehner's medical records would, at most, have provided a basis for additional, essentially cumulative cross-examination concerning these problems. Thus, we agree with the district court's assessment that disclosure of the records would have provided little if any useful information to the defense.

We are also convinced beyond a reasonable doubt that disclosure of the records to the defense would not have affected the jury's verdict. When defense counsel was pressing for the subpoena, the district court accurately stated (App. at 1250): "I don't think that there is anything that Mr. Wehner testified to that hasn't been testified to by other people in this case already." Defense counsel's only response was that "the key item I see is that Mr. Wehner is the only person who ... said that he told Dr. Polan that these prescriptions were being used to get women, to get sex from women." *Id.* This testimony concerns Wehner's motivation in obtaining the drugs, but it has no legal bearing on the defendant's guilt. Accordingly, even if the psychiatric records had enabled the de-

---

**3.** The defendant also relies on the Speedy Trial Act Plan for the Western District of Pennsylvania, but the defendant has not cited any provision of that Plan that addresses the inclusion or exclusion of a period of time during which the

district court is awaiting preparation of a transcript of a pretrial motion. We thus need not consider what remedy, if any, would be available if there had been a violation of such a provision.

fense to discredit Wehner's credibility further, we are convinced that the jury's verdict would not have been affected.

## V.

■■■ The defendant next argues that the district court's instruction on reasonable doubt was erroneous because it stated that a reasonable doubt is an "honest doubt" and "not a fanciful doubt." The defendant argues that this instruction was indistinguishable from the instruction condemned in *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam). We disagree.

In *Cage*, the court instructed the jury that a reasonable doubt *"must be such doubt as would give rise to a grave uncertainty.... It is an actual substantial doubt.... What is required is not an absolute or mathematical certainty, but a moral certainty."* 498 U.S. at ——, 111 S.Ct. at 329, quoting *State v. Cage*, 554 So.2d 39, 41 (La.1989) (emphasis added by Supreme Court). Holding that this instruction violated due process, the Supreme Court wrote: "It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." 498 U.S. at ——, 111 S.Ct. at 329–30. The Court added that "[w]hen those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." *Id.* at ——, 111 S.Ct. at 330 (footnote omitted).

We do not believe that the instruction in the present case is comparable to that in *Cage*. The trial judge in this case did not use any of the terms discussed by the Supreme Court in *Cage*. Moreover, we do not interpret the terms used by the trial judge in this case as suggesting that the defendant could be convicted based on anything less than proof beyond a reasonable doubt. The trial judge stated that a reasonable doubt could not be "a fanciful" doubt, but we see no error in this statement. The term "fanciful" is defined as "guided by fancy, imagination, or illusion, rather than by reason, experience or fact" and as "not governed or ascertained by facts, realities, and reason." *Webster's Third New International Dictionary* 821 (1971). Therefore, a "fanciful" doubt is not a "reasonable" doubt.

The district court also referred to an "honest doubt," but this reference was essentially equivalent to the common admonition that a jury should base its verdict on reason rather than emotion. *See, e.g.,* 1 L. Sand, J. Siffert, W. Loughlin, and S. Reiss, *Modern Federal Jury Instructions*, ¶ 4.01 at 4–7 (June 1992).[4]

In short, while we do not necessarily recommend the future use of the terms challenged in the present appeal, we find no reversible error.

## VI.

■■■ Finally, the defendant argues that the district court erred in failing to give a proffered defense instruction informing the jury that the testimony of witnesses who believe they will not be prosecuted for their part in a crime should be viewed with greater care. The district court, however, addressed this same point in somewhat different language. The court stated that, in judging a witness's credibility, the jury should take into account "the witness's belief that he or she will not be prosecuted for his or her part in any crime suggested by his or her testimony." Consequently, we hold that the trial court's failure to give

---

**4.** The model instruction on reasonable doubt provided in this treatise includes a passage that appears to encompass the same concepts that the trial judge in the present case attempted to convey by stating that a reasonable doubt is an "honest" doubt and not a "fanciful" doubt. The model instruction states:

A reasonable doubt is not a caprice or whim; it is not a speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And it is not sympathy.

1 L. Sand, J. Siffert, W. Loughlin, and S. Reiss, *supra,* ¶ 4.01 at 4–7.

the specific instruction proffered by the defendant was not error.

The judgment of the district court will therefore be affirmed.