

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-1995

# Kirk v Raymark

Precedential or Non-Precedential:

Docket 94-1745

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation
"Kirk v Raymark" (1995). *1995 Decisions.* Paper 95.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/95

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 94-1745 and 94-1746


SARAH A. KIRK, Administratrix of
the Estates of KIRK, Alfred T., Deceased
and KIRK, Sarah A. in her own right

v.

RAYMARK INDUSTRIES, INC.; EAGLE-PICHER INDUSTRIES, INC.;
KEENE CORPORATION; GARLOCK INC; OWENS-CORNING FIBERGLAS
CORPORATION; CELOTEX CORP.; GAF CORPORATION;
OWENS-ILLINOIS GLASS COMPANY

Owens-Corning Fiberglas
Corporation,
Appellant


Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 88-cv-03736)


Argued February 14, 1995
BEFORE:  STAPLETON, GREENBERG and COWEN,
Circuit Judges

(Filed  April 14, 1995 )


Joseph M. Greitzer
Jerry Kristal (argued)
Greitzer & Locks
1500 Walnut Street
20th Floor
Philadelphia, PA  19102

        Counsel for Appellee
        Sarah A. Kirk, Administratrix of the
        Estates of KIRK, Alfred T., Deceased
        and KIRK, Sarah A. in her own right

Robert N. Spinelli

W. Matthew Reber (argued)
Kelley, Jasons, McGuire & Spinelli
1617 JFK Blvd.
Suite 1400
Philadelphia, PA  19103

          Counsel for Appellant
          Owens-Corning Fiberglas Corporation


                         OPINION


COWEN, Circuit Judge.

          This asbestos-related personal injury action was tried
to a jury in the United States District Court for the Eastern
District of Pennsylvania.  The jury returned a verdict in favor
of the plaintiff in excess of two million dollars.  On
application by counsel, the district court granted plaintiff
delay damages in the amount of $ 520,684.  In these consolidated
appeals, we are called on to determine whether the district court
abused its discretion by denying defendant's challenge for cause
of two jurors who allegedly evidenced bias against the defense.
Additionally, we are called upon to determine whether the
district court committed an error of law by: (1) allowing
plaintiff to introduce into evidence the prior testimony of an
out of court expert witness from an unrelated state court action;
(2) permitting plaintiff to introduce the interrogatory responses
of a co-defendant who settled with the plaintiff prior to trial;
(3) awarding plaintiff delay damages pursuant to Rule 238 of the
Pennsylvania Rules of Civil Procedure.

Because we conclude that the district court abused its discretion in denying defendant's challenge for cause of two jurors during voir dire, we will reverse the judgment of the district court and remand for a new trial on the issue of damages and liability.[1]  Since it is likely that the hearsay issues and the issue of delay damages may arise again during the new trial, we deem it appropriate to offer the district court guidance.  On these subjects, we conclude that the district court erred as a matter of law in allowing the introduction of hearsay evidence, but did not err in ruling that delay damages would be permitted when delay was caused by a judicial stay for which the plaintiff was not responsible.

I. Factual and Procedural History

Alfred Kirk ("decedent"), a retired painter, died on July 5, 1988 at the age of 65 from malignant asbestos-induced mesothelioma.  Mrs. Sarah Kirk ("Kirk"), suing on behalf of herself and her deceased husband's estate, filed this diversity action against eight defendants, including Owens-Corning Fiberglas Corporation ("Owens-Corning").[2]  Kirk alleged that her

---

[1].  Defendant also argues that the district court abused its discretion in denying: (1) defendant a fair opportunity to prove the liability of a settled co-defendant by denying defendant's request for a continuance to subpoena product identification witnesses and (2) defendant's request for a new trial on the grounds of excessiveness of the verdict.  Because of our decision to reverse the judgment of the district court and remand for a new trial on the issue of damages and liability, we need not address these arguments.

[2].  Of these eight defendants, four were bankrupt at the time of trial.  Of the four remaining defendants, Kirk settled with

husband's mesothelioma was caused by exposure to dust from asbestos products during his employment at the New York Shipyard in Camden, New Jersey, during the late 1950's and early 1960's.

By Order dated July 29, 1991, the Judicial Panel on Multidistrict Litigation ("MDL") transferred all pending federal asbestos personal injury actions to the Eastern District of Pennsylvania. Pursuant to the MDL Panel's Order, all federal asbestos cases were stayed until the summer of 1993.

On December 13, 1993, the trial (which was reverse-bifurcated) began with issues of medical causation and damages. At the conclusion of this phase of the trial, the jury returned a verdict in favor of the Estate of Alfred Kirk for $ 1.2 million and in favor of Sarah Kirk for $ 810,000. The liability phase of the trial commenced several days later before the same jury that had previously heard the damages phase. At the conclusion of the liability trial, the jury returned a verdict against Owens-Corning. The jury also found that the decedent was not exposed to dust emitted by any asbestos-containing product manufactured by co-defendant Garlock, Inc. ("Garlock").

Following the jury verdict, Owens-Corning moved for a new trial alleging several trial errors. This application was denied by the district court. Kirk filed an application for

(..continued)
Garlock, Inc., GAF Corporation, and Owens-Illinois prior to trial. Kirk also previously filed an asbestos-related lawsuit in the Philadelphia Court of Common Pleas against Pittsburgh Corning Corporation, H.K. Porter Company, Inc., and Southern Textile Corporation. Of these defendants, two were bankrupt and Kirk settled with Pittsburgh Corning prior to trial.

delay damages pursuant to Rule 238 of the Pennsylvania Rules of Civil Procedure, which the district court granted in the amount of $ 520,684. Owens-Corning appeals from both the judgment and the award of delay damages.

Owens-Corning argues that the district court made several errors at trial which unfairly prejudiced it during the damage and liability phases of the trial, and that the district court improperly denied its post-verdict motion for a new trial. Finally, Owens-Corning claims that delay damages should not have been awarded to Kirk, because the delay was caused by the plaintiff filing simultaneous federal and state court actions and/or caused by the MDL order staying all asbestos cases, and was not caused by any bad faith on the part of Owens-Corning. We will address each of these arguments seriatim.

The district court had jurisdiction to hear this case pursuant to 28 U.S.C. § 1332. Our jurisdiction is premised on 28 U.S.C. § 1291 as the judgment entered was a final order.

## II. Challenge for Cause of Jurors

Owens-Corning argues that the district court erred in refusing to strike for cause two prospective jurors (juror # 251 and juror # 45) who defendant argues revealed considerable potential bias against it during voir dire. We review for abuse of discretion a district court's decision regarding a motion to dismiss a juror for cause. United States v. Polan, 970 F.2d 1280, 1284 (3d Cir. 1992), cert. denied, __ U.S. __, 113 S. Ct. 1367 (1993) (citing United States v. Salamone, 800 F.2d 1216, 1226 (3d

Cir. 1986) (the factual determination by the district court whether a juror can serve impartially is entitled to special deference when reviewed on appeal)).

Because the trial judge is in the best position to assess the credibility and demeanor of the prospective jurors, "district courts have been awarded ample discretion in determining how best to conduct the voir dire." Waldorf v. Shuta, 3 F.3d 705, 710 (3d Cir. 1993) (citing Rosales-Lopez v. United States, 451 U.S. 182, 189, 101 S. Ct. 1629, 1635 (1991)). In determining whether a particular juror should be excused for cause, our main concern is "whether the juror holds a particular belief or opinion that will `prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Salamone, 800 F.2d at 1226 (citing Wainwright v. Witt, 469 U.S. 412, 424, 105 S. Ct. 844, 852 (1985)). "A juror is impartial if he or she can lay aside any previously formed `impression or opinion as to the merits of the case' and can `render a verdict based on the evidence presented in court.'" Polan, 970 F.2d at 1284 (citing Irvin v. Dowd, 366 U.S. 717, 723, 81 S. Ct. 1639, 1643 (1961)). However, the district court should not rely simply on the jurors' subjective assessments of their own impartiality. See Waldorf, 3 F.3d at 710 (district court relied too heavily on jurors' assurances of impartiality); see also Government of the Virgin Islands v. Dowling, 814 F.2d 134, 139 (3d Cir. 1987) (though a juror swears that he could set aside any opinion he might hold and decide the case on the evidence, a juror's protestation of impartiality

should not be credited if other facts of record indicate to the contrary).

Owens-Corning argues that prospective juror # 251 should have been struck for cause because he worked with asbestos-containing products for many years and indicated during voir dire that he was leaning in favor of the plaintiff. Kirk argues that this prospective juror was properly placed on the jury because when questioned by both the district court and counsel whether he could render a fair and impartial verdict, the prospective juror responded in the affirmative.

We are troubled by the fact that a district judge, despite assurances of impartiality, allowed a prospective juror to serve in a mesothelioma case when the juror's background raised serious questions as to his ability to serve impartially.[3]

_____

[3]. Relevant portions of the voir dire of prospective juror # 251 are as follows:

Juror 251:     Well, two uncles had cancer, they were mechanics. Our union did a study on their members. I am a mechanic, and it was like 97 percent of them tested had some problem with asbestos. I have eaten a lot of it over the years brakes, clutches up until gets in the air hose, blows it out, you spit black dirt for two days.
          . . . .

Mr. Kristal (counsel for Kirk): Do you think that will affect your ability to listen to the evidence and be fair to both sides in this case?

Juror 251:     Well I could only try to be fair is all I could say. I guess in a way I got to be a little one way, I'm probably high on the priority list myself. I've been a mechanic since 1957, up until when they stopped using it, you know, you took a

(..continued)

                  clutch out of a truck, hit it with the air hose and the whole shop is black.

             . . . .

Mr. Kristal:    If I didn't prove my case, or show that Mr. Kirk didn't have asbestos disease or I was unable to show Owens-Corning Fiberglas was liable, would you be able to return a verdict against my client?

Juror 251:    I wouldn't have any problems at all.

Mr. Kristal:    [I]f I had proven the case, would you be able to find in favor of my client?

Juror 251:    I might lean the other way because I have been there.  I know a lot of members who have been down that road, you know.

Mr. Kristal:    Can you put [your past experience with asbestos] behind you and decide this case on what you hear in the courtroom from the witness stand and follow the Court's instructions?

Juror 251:    I believe I could.

Mr. Hewitt (counsel for Owens-Corning): Your two uncles had cancer?

Juror 251:    Yes.

Mr. Hewitt:    Do you believe those cancers were related to asbestos?

Juror 251:    I don't know.  They both had lung cancer.

Mr. Hewitt:    Were they around asbestos?

Juror 251:    Mechanics the same as I am, both smoke, so it's anybody's guess.

App. 68-70.

The Court:    He thinks he has asbestos coursing through his system.

             . . . .

(..continued)

The Court:     I just want to clarify in my own mind, you have
               been exposed to the brake linings and flakes from
               brake linings?

Juror 251:     Yes.

The Court:     For many years now?

Juror 251:     Yes, sir.

The Court:     And you think that probably asbestos fibers made
               their way in through your own system because when
               you had the air hose --

Juror 251:     You see our Local, I am a member of the Local, and
               when all this asbestos problem came out, the Union
               started testing some of the older members.  It was
               like they finally knocked it off like 97 percent
               of the people tested, tested positive for
               asbestos.  And back then, we didn't know nothing
               about it.  You took brakes off the truck, took the
               air hose blew it off, disk, clutch, all asbestos,
               and I said yesterday, I probably had eaten a
               couple of pounds of it, and I have never been
               tested for it, but I have been subject to it.

The Court:     If you are on this case you would be deciding
               certain questions, concerning somebody who died of
               asbestos exposure, how much money to award.  Do
               you think because of your own personal experience
               perhaps to a certain extent because of your
               uncles, you are not sure of the cause of the
               death, whether cigarettes or something to do with
               asbestos, do you think you could be fair or would
               you be inclined --

Juror 251:     Like I said, most of what I seen has been against
               it.  I would have to sit and listen to the case.
               If the one attorney can prove that it wasn't, I
               could handle that.  But at this point right now I
               only know the one side of it.

The Court:     The way it's going to be, the plaintiff has the
               burden of proof, not the defendant.  And do you
               think you could decide the case fairly or do you
               think because of your own personal experiences you
               would be sort of caught up in it and tend to favor
               the plaintiff?

Specifically, we note the following facts which raise substantial questions of the potential bias of juror #251: (1) during the course of his work history he had "probably eaten a couple of pounds of [asbestos]"; (2) he was a union shop steward for 35 years and received one-sided literature from the union regarding asbestos; (3) he believed that 97% of the older workers in his local union had tested positive for asbestos in their system; (4) he had two uncles who died of lung cancer and although they were cigarette smokers, they had been exposed to asbestos during the

(..continued)

Juror 251:      I think I could do it fairly.  I have been a shop steward for 35 years.  Lots of time I have to go against the company.  That didn't sit too well but I think I could sit and listen to the facts.

        . . . .

Juror 251:      I think I could weed through it.  Most of the information I have has been from the side of the Union coming with the asbestos.  And really, it's a one-sided argument.

        . . . .

Mr. Hewitt:     I think you indicated earlier that you would lean a little --

Juror 251:      Well, at this point I would have to be [a] liar if I said to you -- the facts that I had lean in favor of the possibility or the possibility of it happening.  I haven't really had any, a lot of facts thrown to me, where it is not, and like I said, I would have to hear what they have to say, and determine from that.  I just can't crystal-ball, say this gentleman is going to convince me that the client, his client did die from it.  I just have to listen to the facts, and just understand all the facts that I had about it have been the negative, from your standpoint, so I would have to weed out one or the other.

App. at 76-79.

course of their work lives; (5) he admitted in the first instance that he was leaning in favor of the plaintiff and against the asbestos company; (6) he believed that he was "probably high on the priority list" of getting an asbestos-related disease himself; and (7) he knew "a lot of [union] members" who presumably had asbestos-related medical problems.

Owens-Corning next argues that prospective juror # 45 should have been struck for cause because he had responded to the jury questionnaire that he could not be fair and later repeated at voir dire that he would have a difficult time being fair to the defendant. Kirk counters by pointing out that when further questioned by the district court as to whether he could render a fair and impartial verdict, the prospective juror responded in the affirmative.[4] Again, we are troubled because the second

---

[4]. Relevant portions of the voir dire are as follows:

The Court:     In this case, sir, if you are on this jury can you
               well and truly try the case based on the evidence
               as it comes forth from the witness stand and not,
               with all respects [sic] to the media, based on TV,
               or radio or newspapers and all of that? Do you
               think you could do that, sir?

Juror 45:      Yes, I believe so, because it's possible it could
               be slanted one way or the other.
          . . . .

The Court:     So you answered that you could not be fair to
               companies that made, distributed, supplied and/or
               installed asbestos-containing products, what do
               you mean by that?

Juror 45:      Basically I feel it's sort of immoral to knowingly
               produce something you know is going to cause a
               problem.

prospective juror: (1) stated in the jury questionnaire that he could not be fair to companies that made, distributed, supplied and/or installed asbestos-containing products; (2) felt it was immoral to produce asbestos if the company knew it was going to cause a problem; and (3) indicated that he could not be fair to

(..continued)

The Court:  Do you think it's immoral -- I am not saying this is the case -- to produce something when they don't know anything is wrong with it, they don't know but it turns out later there is something wrong with it?

Juror 45:  I feel if they do find out it should be corrected.

        . . . .

The Court:  [D]o you think you could be fair?

Juror 45:  Yes.

Mr. Hewitt:  One question, if the evidence is that Owens Corning knew that asbestos was hazardous would you have a tough time giving them a fair shake?

Juror 45:  Yes, I would.

The Court:  What do you mean by giving them a fair shake? Would you have a tough time coming up with a verdict in their favor if you know the [sic] under the evidence and the law they are liable?

Juror 45:  Well --

The Court:  I would tell you if it comes in, if the evidence and the law did not demonstrate that the plaintiff proved their [sic] case, I am not saying that is not being fair to the defendant, you are being fair, just as you would be fair to the plaintiff if after fairly considering the evidence you find there's not a case made out, you would nevertheless find against her, you are abiding by your oath as a juror.

Juror 45:  Whatever you say, yes.

App. at 64-66.

the defendant if the evidence indicated that Owens-Corning knew that asbestos was hazardous. Only after being repeatedly asked if he could be fair, the juror answered, "Whatever you say, yes."

Recently, we had the opportunity to decide a similar case involving a challenge to a district court's refusal to remove several jurors for cause. Polan, 970 F.2d at 1284. In that case, which involved a prosecution for conspiracy to distribute and the distribution of illegally prescribed drugs, counsel for the defendant challenged for cause three prospective jurors who revealed during voir dire that either they or members of their families were victims of drug abuse. Id. Juror #1 revealed that one of his brothers had died of a drug overdose and another brother had served a lengthy prison term for drug offenses. Id. n.2. Juror # 2 indicated that she had become dependent upon tranquilizers after experiencing a family tragedy. Id. Juror # 3 revealed that his son had abused alcohol and drugs in the past. Id. However, all three prospective jurors ultimately assured the court that their past experiences would not affect their decision making and that they would be fair and impartial. After reviewing the record of the voir dire, we concluded that the district court did not abuse its discretion in refusing to strike those prospective jurors. Polan, 970 F.2d at 1284.

We find that Polan is distinguishable from the case before us. In Polan, the defendant wanted the prospective jurors removed presumably because he believed that some of their past experiences would make them more likely to vote for conviction.

With regard to juror # 1, we gave little weight to the theory that an individual whose one brother died of a drug overdose and whose other brother served a prison sentence for drug offenses would be more likely to convict a criminal defendant charged with drug distribution.  With regard to juror # 2, we were not convinced that a person who became dependent on sedatives after the shock of a family tragedy would be more likely to convict an individual accused of distributing drugs.  Finally, with regard to juror # 3, we gave little credence to the notion that a father who endured his son's alcohol and drug problems would be biased in favor of the prosecution.  Thus, when the district court in Polan credited the assurances of the three prospective jurors, it implicitly made two findings: (1) that the jurors were telling the truth and (2) despite the experiences and personal biases of the jurors, they could be fair and impartial, precisely because their past experiences and personal biases did not make them more likely to convict the defendant.

Here, Owens-Corning objected to jurors # 251 and # 45 being seated on the jury because it believed that their personal biases regarding asbestos and asbestos companies would make them more likely to return a finding of liability and a large damage award against Owens-Corning.  Unlike the defendant in Polan, Owens-Corning's fear, that the prospective witnesses' past experiences and personal biases would affect their decision, was well-founded.

Juror # 251 inhaled a considerable amount of asbestos, knew people who were suffering from asbestos-related diseases,

and thought himself likely to succumb to some asbestos-related disease in the future.  Thus, there was good reason to conclude that he would be more likely to return a large damage award because he sympathized with the plaintiff.  See Gumbs v. Pueblo International, Inc., 823 F.2d 768, 773 (3d Cir. 1987) ("[A] jur[or] may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket.").  It is difficult to conceive of a juror who would be more partial to this plaintiff than juror # 251.  Because juror # 251's background is replete with circumstances which would call into question his ability to be fair to an asbestos manufacturer, we find that it was improper to allow him to serve on the jury.

Juror # 45 stated that he was biased against asbestos companies and felt it was immoral knowingly to produce harmful and defective products.  The danger existed that this juror would return a verdict of liability against Owens-Corning even if Owens-Corning's products were not responsible for the decedent's injuries.  We can think of few admissions more compelling in asbestos litigation than a prospective juror who acknowledges that he would have moral qualms about being fair to an asbestos manufacturer.

We conclude that juror # 45 and especially juror # 251 could not serve fairly and impartially in light of their past experiences and personal biases.  The district court relied too heavily on the jurors' assurances of impartiality, and therefore abused its discretion.  A district court's refusal to excuse a juror will not automatically be upheld simply because the

district court ultimately elicits from the prospective juror that he will be fair and impartial, despite earlier statements or circumstances to the contrary. The application of Owens-Corning to dismiss these two jurors for cause should have been granted. The jury was not fairly and impartially constituted, and accordingly we will order a new trial.

### III. Prior Testimony of Out of Court Witness

During the liability phase of the trial, Owens-Corning offered the expert testimony of Dr. Harry Demopoulos to prove that the overwhelming majority of asbestos-induced mesotheliomas are caused by crocidolite asbestos fiber. This testimony supported Owens-Corning's defense that its product, Kaylo, which did not contain crocidolite fiber, could not have caused the decedent's mesothelioma. Over Owens-Corning's objection, Kirk was permitted to read to the jury the prior trial testimony of Dr. Louis Burgher from an unrelated New Jersey State Court asbestos action in 1992. In that case, Dr. Burgher had been an expert witness for Owens-Corning and testified on cross-examination that it was possible for mesothelioma to be caused by chrysotile fibers contaminated with tremolite. Kirk was clearly attempting to discredit Owens-Corning's defense offered through Dr. Demopoulos by revealing to the jury that Owens-Corning's expert witness in a previous case voiced a different and contradictory opinion as to which asbestos fibers cause mesothelioma. After the jury returned a verdict in favor of Kirk, Owens-Corning made a post-trial motion for a new trial

based in part on the alleged admission of hearsay evidence, i.e., the prior testimony of Dr. Burgher in an unrelated case.  The district court denied this motion.

Normally, when a new trial is sought by reason of a district court's alleged error in allowing the introduction of evidence, we review for abuse of discretion.  Lippay v. Christos, 996 F.2d 1490, 1496 (3d Cir. 1993) (citing Link v. Mercedes-Benz, 788 F.2d 918, 921-22 (3d Cir. 1986)).  However, where as here the ruling on admissibility of hearsay evidence implicates the application of a legally set standard, our review is plenary. Id.; see also United States v. McGlory, 968 F.2d 309, 332 (3d Cir. 1992).

Owens-Corning argues that the district court erred in allowing the jury to hear this evidence in light of the fact that it was hearsay.  Although the record is at best vague as to what the district court's basis was for allowing such testimony, Kirk attempts to justify its admission under two distinct theories -- either the testimony was not hearsay pursuant to Rule 801(d)(2)(C) of the Federal Rules of Evidence or it was hearsay, but subject to an exception pursuant to Rule 804(b)(1).[5]

A.  Rule 801(d)(2)(C) of the Federal Rules of Evidence

---

[5].  Alternatively, Kirk argues that assuming arguendo it was error to admit the testimony of Dr. Burgher, it was harmless error because the weight of the medical testimony of Kirk's other witnesses was overwhelming.  In light of our decision to remand for a new trial because the jury was improperly constituted, we need not address whether any evidentiary errors may be harmless.

Kirk first attempts to justify the district court's admission of the prior trial testimony of Dr. Burgher by arguing it is an admission by a party opponent since it is a statement by a person authorized by Owens-Corning to speak concerning mesothelioma and is thus not hearsay.  See Fed. R. Evid. 801(d)(2)(C)[6]; see also Precision Piping v. E.I. du Pont de Nemours, 951 F.2d 613, 619 (4th Cir. 1991) (authority in the context of 801(d)(2)(C) means "authority to speak" on a particular subject on behalf of someone else).  In her brief, Kirk argues that Dr. Burgher was authorized by Owens-Corning to offer his expert opinion about medical literature regarding mesothelioma and fiber type.  Appellee's Brief at 21.  At oral argument, Kirk suggested that the testimony of any expert that Owens-Corning has previously used in a trial can be used in future litigation against it as an authorized admission.

In support of this proposition, Kirk cites Collins v. Wayne Corp., 621 F.2d 777, 782 (5th Cir. 1980), which held that deposition testimony of an expert employed by a bus manufacturer to investigate an accident was an admission under 801(d)(2)(C).  However, in that case the court made a finding that the expert

_____

[6].  Rule 801(d) of the Federal Rules of Evidence states in relevant part:

> (d) Statements which are not hearsay.  A statement is not hearsay if --
> (2) Admission by party-opponent.  The statement is offered against a party and is . . .
> (C) a statement by a person authorized by the party to make a statement concerning the subject.

Fed. R. Evid. 801(d)(2)(C) (emphasis added).

witness was an agent of the defendant and the defendant employed the expert to investigate and analyze the bus accident. Id. The court determined that in giving his deposition, the expert was performing the function that the manufacturer had employed him to perform. As such, the court concluded that the expert's report of his investigation and his deposition testimony in which he explained his analysis and investigation was an admission of the defendant. Id.; see also Theriot v. J. Ray McDermott & Co., Inc., 742 F.2d 877, 882 (5th Cir. 1984) (citing Collins v. Wayne Corp., 621 F.2d 777, 781-82 (5th Cir. 1980)) (explaining that Collins holds that "an agent's statement, made within the scope of his authority . . . is admissible against the principal as an admission").

Kirk misconstrues the entire premise of calling expert witnesses. In theory, despite the fact that one party retained and paid for the services of an expert witness, expert witnesses are supposed to testify impartially in the sphere of their expertise. Thus, one can call an expert witness even if one disagrees with the testimony of the expert. Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered, and this precludes the admission of the prior testimony of an expert witness where, as normally will be the case, the expert has not agreed to be subject to the client's control in giving his or her testimony. See Sabel v. Mead Johnson & Co., 737 F. Supp. 135, 138 (D. Mass 1990). Since an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he

or she is hired to give, the expert witness cannot be deemed an agent. See Restatement (Second) of Agency § 1 cmt. a (1958) ("The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act.")

Because an expert witness is charged with the duty of giving his or her expert opinion regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party.[7] See Michael H. Graham, Federal Practice and Procedure: Evidence § 6722, at 502 (Interim Edition 1992) (the authority of the agent to speak as to a subject must be established at trial). We are unwilling to adopt the proposition that the testimony of an expert witness who is called to testify on behalf of a party in one case can later be used against that same party in unrelated litigation, unless there is a finding that the expert witness is an agent of the party and is authorized to speak on behalf of that party. Accordingly, we find Dr. Burgher's prior trial testimony to be hearsay in the context of the present trial.

_____

[7]. In the case before us, unlike Collins, there was no explicit finding on the record that Dr. Burgher was an agent of the defendant. To the extent that Collins holds that an expert witness who is hired to testify on behalf of a party is automatically an agent of that party who called him and consequently his testimony can be admitted as non-hearsay in future proceedings, we reject this rule.

B.  Rule 804(b)(1) of the Federal Rules of Evidence

Because the testimony of Dr. Burgher is hearsay, we must next inquire whether it falls within any of the hearsay exceptions enumerated in the Federal Rules of Evidence.  Kirk argues that Dr. Burgher's testimony falls within the former testimony hearsay exception of Rule 804(b)(1).  In order for former testimony to be admissible as an exception to the hearsay rule: (1) the declarant must be unavailable; (2) testimony must be taken at a hearing, deposition, or civil action or proceeding; and (3) the party against whom the testimony is now offered must have had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.  See Fed. R. Evid. 804(a)(5), (b)(1).[8]  Because Dr. Burgher testified in open

---

[8].  Rule 804 of the Federal Rules of Evidence states in relevant part:

(b) Hearsay exceptions.  The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony.  Testimony given as a witness at another hearing of the same or different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed. R. Evid. 804(b)(1) (emphasis supplied).

"Unavailability" is defined in Rule 804 as follows:

(a) Definition of unavailability.  "Unavailability as a witness" includes situations in which the declarant --

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means.

court during the state court action, no one disputes that the second element has been satisfied.

Regarding the first element, we note that it is an abuse of discretion for a district court to admit former testimony into evidence under Rule 804(b)(1) without a finding of unavailability. See O'Banion v. Owens-Corning Fiberglas Corp., 968 F.2d 1011, 1014 (10th Cir. 1992) (district court abused its discretion in admitting former testimony of expert where there was no showing of unavailability). Because there was no finding on the record as to unavailability, if the district court based admitting this testimony on Rule 804(b)(1), we hold that the district court abused its discretion in allowing this former testimony into evidence.

Normally, our inquiry would end here after determining that former testimony cannot be admitted absent specific findings of unavailability. However, because of the likelihood that an offer may be made during the retrial of this matter to admit this testimony as former testimony, we believe further discussion is warranted.

We observe that it is the proponent of the statement offered under Rule 804 who bears the burden of proving the unavailability of the declarant. United States v. Eufracio-Torres, 890 F.2d 266, 269 (10th Cir. 1989), cert. denied, 494 U.S. 1008, 110 S. Ct. 1306 (1990) (citing Ohio v. Roberts, 448 U.S. 56, 65, 100 S. Ct. 2531, 2538-39 (1980)); 2 John William

(..continued)
Fed. R. Evid. 804(a)(5) (emphasis supplied).

Strong et al., McCormick on Evidence § 253, at 134 (4th ed. 1992) ("The proponent of the hearsay statement must . . . show that the witness cannot be found"). We can find nothing in the record which indicates any "reasonable means" employed by Kirk to procure the services of Dr. Burgher so that he might testify at trial. See McCormick § 253, at 134 (mere absence of the declarant, standing alone, does not establish unavailability); see also Moore v. Mississippi Valley State University, 871 F.2d 545, 552 (5th Cir. 1989) (deposition inadmissible in civil trial where no evidence to establish unavailability offered).

Kirk claims that Dr. Burgher, who is a resident of Nebraska, was beyond her ability to subpoena and was thus unavailable. See Fed. R. Civ. P. 45(c)(3)(A)(ii).[9] However, Kirk made no independent attempt to contact Dr. Burgher, offer him his usual expert witness fee, and request his attendance at trial.[10] Because Dr. Burgher was never even as much as

_____

[9]. Rule 45 of the Federal Rules of Civil Procedure states in relevant part:

(c) Protection of Persons Subject to Subpoenas.
   (3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it --
         (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person . . . .

Fed. R. Civ. P. 45(c)(3)(A)(ii).

[10]. At oral argument, Kirk argued that it was the responsibility of Owens-Corning to locate and contact Dr. Burgher and establish his availability because the district court requested Owens-Corning to determine whether he would be available to testify. To the extent that the district court placed the burden on Owens-Corning to establish the unavailability of Dr. Burgher, the

contacted, Kirk has failed to prove that she used "reasonable means" to enlist his services.

We next address whether Owens-Corning had an opportunity and similar motive to develop the testimony of Dr. Burgher at the prior unrelated state court trial.[11] The similarity of motive requirement assures "that the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do at trial if the witness were available to be examined by that party." United States v. Salerno, 937 F.2d 797, 806 (2d Cir. 1991); see also 2 Steven A. Saltzburg & Michael M. Martin, Federal Rules of Evidence Manual 400 (5th ed. 1990) ("The way to determine whether or not motives are similar is to look at the similarity of the issues and the context in which the opportunity for examination previously arose.").

(..continued)
district court made an error of law in shifting the burden of proof. Kirk then articulated what we term a "convenience" argument, that is, she argued that Dr. Burgher was Owens-Corning's expert and Owens-Corning was in a better position to locate Dr. Burgher because it had Dr. Burgher's telephone number. To the extent that Kirk is advocating that Owens-Corning should undertake the task of locating a witness for Kirk so that she may use that testimony against Owens-Corning, we reject any such notion. For the same reasons we protect an attorney's work product from discovery, see Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 511, 67 S. Ct. 385, 394 (1947) ("Inefficiency, unfairness, and sharp practices would inevitably develop . . . . The effect on the legal system would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."), we do not believe that Owens-Corning had any duty to assist Kirk in preparing her case.

[11]. Again, although we need not reach this issue absent a finding of unavailability, because of the likelihood that an offer may be made during the retrial to admit this evidence as former testimony, we believe further discussion is warranted.

There was no finding by the district court that Owens-Corning had an opportunity and similar motive to examine Dr. Burgher.  Further, during oral argument, counsel for Kirk indicated that the only document before the district court from the state court trial was the transcript of Dr. Burgher's testimony.  The district court did not have the complaint, answer, or jury charge from the state court proceedings.  Thus, even if the district court had attempted to make a finding as to opportunity and similar motive, it would have been unable to reach a well-reasoned conclusion based on the information before the district court.[12]  See McCormick § 304, at 317 (courts must look to the operative issue in the earlier proceeding).  Accordingly, we must conclude that Kirk failed to prove that Owens-Corning had an opportunity and similar motive to examine Dr. Burgher.

IV. Introduction of Interrogatory of Settled Co-Defendant

Kirk settled the instant action with Garlock and several other defendants prior to trial.  At trial, Owens-Corning

---

[12].  For instance, the statement elicited from Dr. Burgher during cross-examination at the state trial may not have warranted redirect by Owens-Corning in light of its theory of defense.  See McCormick § 302, at 307 ("Circumstances may differ sufficiently between the prior hearing and the present trial to bar admission . . . as where questions on a particular subject would have been largely irrelevant at the earlier proceeding.").  Because we do not have the pleadings, we cannot determine whether an opportunity and similar motive existed.

sought in its cross-claim to prove that the decedent was exposed to products made by Garlock. If the jury were to conclude that the decedent's injuries had been caused in whole or part by exposure to Garlock products, then Owens-Corning could eliminate or substantially reduce its liability. Conversely, it was in Kirk's financial interest to prove that the decedent was exposed to only Owens-Corning products. In an effort to rebut the testimony of an Owens-Corning witness who testified that Garlock gaskets were present in the New York shipyard during the years that the decedent worked there, Kirk read into evidence an interrogatory response which was prepared and filed by Garlock in defense of this action. Of course, at the time this interrogatory was read to the jury, Garlock was no longer a party to this lawsuit. Specifically, counsel for Kirk read the following statement to the jury:

> Since Garlock products are bonded and/or encapsulated and treated in such a manner that they do not, when used in the manner for which they were intended, emit meaningful levels of asbestos dust and fibers, no restrictions or limitations on use are necessary.

App. at 513. In response to Owens-Corning's closing remarks, counsel for Kirk reminded the jury:

> I read you from the Garlock interrogatory, Garlock product is bonded, encapsulated, it does not emit dust.

App. at 545.

Owens-Corning argues that the district court erred in admitting this interrogatory response because the interrogatory

answer was pure hearsay.  Kirk attempts to justify the admission of this interrogatory response under the catch-all or residual exception, Rule 803(24) of the Federal Rules of Evidence.[13]  As stated previously, our standard of review is plenary where the admissibility of hearsay evidence "implicates the application of a legally set standard."  See supra part III.

As a preliminary matter, we note that the plain language of the rule requires the proponent of the hearsay statement to put the adverse party on notice that the proponent intends to introduce the statement into evidence.  We have interpreted this to mean that the proponent must give notice of the hearsay statement itself as well as the proponent's intention specifically to rely on the rule as a grounds for admissibility

---

[13].  Rule 803 of the Federal Rules of Evidence states in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
          . . .

Other exceptions.  A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.  However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed. R. Evid. 803(24) (emphasis added).

of the hearsay statement.  United States v. Pelullo, 964 F.2d 193, 202 (3d Cir. 1992) (citing United States v. Furst, 886 F.2d 558, 574 (3d Cir. 1989)).  Even assuming arguendo that Owens-Corning was on notice that Kirk intended to introduce this evidence at trial, we observe from the record that Kirk never gave notice to Owens-Corning that she intended to introduce this evidence under Rule 803(24).  App. at 512.  We recognize that the advance notice requirement of Rule 803(24) can be met where the proponent of the evidence is without fault in failing to notify his adversary and the trial judge has offered sufficient time, by means of granting a continuance, for the opponent to prepare to contest its admission.  See United States v. Bailey, 581 F.2d 341, 348 (3d Cir. 1978) (the purposes of the rule and the requirement of fairness are satisfied under such circumstances).  Because of the lack of notice by Kirk that she intended to rely on Rule 803(24) and the lack of a showing by Kirk as to why it was not possible to provide Owens-Corning with notice, the district court erred in admitting this evidence at trial.

Turning to the substance of the rule itself, we note that in order for the hearsay statement to be admitted, it must have "equivalent circumstantial guarantees of trustworthiness." Fed. R. Evid. 803(24); see also Michael H. Graham, Federal Practice and Procedure: Evidence § 6775, at 737-39 (Interim Edition 1992) (factors bearing on trustworthiness include the declarant's partiality, i.e., interest or bias).  Owens-Corning argues that the interrogatories of Garlock lack trustworthiness and are self-serving.  Kirk submits that the interrogatory

answers are trustworthy because they are signed and sworn under penalty of perjury.[14]  We find that an interrogatory response of a co-defendant who is seeking to avoid liability lacks the "circumstantial guarantees of trustworthiness" that are contemplated by Rule 803(24) of the Federal Rules of Evidence. Garlock had every incentive to set forth the facts in a light most favorable to itself, while at the same time still answering the interrogatories truthfully.  See United States v. DeLuca, 692 F.2d 1277, 1285 (9th Cir. 1982) (excluding statement under residual hearsay exception because of motive to exculpate oneself after indictment or investigation).  Using these interrogatory responses to prove that Garlock products could not have caused the decedent's illness without the opportunity for cross-examination implicates many of the dangers the hearsay rule is designed to prevent.  Accordingly, the district court erred in admitting this evidence.


V.  Delay Damages

Finally, Owens-Corning argues that it was improper as a matter of law for the district court to award delay damages to the plaintiff pursuant to Rule 238 of the Pennsylvania Rules of

---

[14]. There is nothing in the record to indicate that the district court made any findings as to the reliability of the Garlock interrogatories.  See United States v. Chu Kong Yin, 935 F.2d 990, 1000 (9th Cir. 1991) (requiring specific findings regarding the requisite elements of Rule 803(24)); United States v. Tafollo-Cardenas, 897 F.2d 976, 980 (9th Cir. 1990) (district court must find that the statements met the requirements of the rule in order for the appellate court to consider the admissibility of the statement under 803(24)).

Civil Procedure because it is a procedural rule and should not be applied by federal courts sitting in diversity. Owens-Corning argues in the alternative that even if it is permissible for a federal court sitting in diversity to award delay damages pursuant to Rule 238, it was improper here because: (1) the entire delay was caused by the plaintiff's strategic decision to file simultaneous federal and state court actions and her failure to request a remand of the federal action from the multidistrict docket when settlement negotiations reached an impasse and (2) the district court miscalculated the damage award in failing to account for a delay of approximately two years that was caused by a judicial stay imposed by the Panel on Multidistrict Litigation. Owens-Corning maintains that because it was not responsible for the delay, it should not be required to pay delay damages for that period.

A. Rule 238 of the Pennsylvania Rules of Civil Procedure -- Substantive or Procedural?

First, we must address Owens-Corning's argument that a federal court sitting in diversity cannot apply Rule 238 of the Pennsylvania Rules of Civil Procedure because it is a procedural rather than a substantive rule. Yet, ultimately, Owens-Corning concedes, as it must, that this question has already been decided by this Court in Fauber v. Kem Transportation and Equipment Co., 876 F.2d 327 (3d Cir. 1989). In that case, we held that Rule 238 is substantive and must be followed by federal courts sitting in diversity cases. Id. at 328. Counsel is thus implicitly asking

this panel to overrule Fauber.  We note that this Court's Internal Operating Procedures prohibit a panel of this Court from overruling a published opinion of a previous panel.  See Internal Operating Procedure Rule 9.1 ("[T]he holding of a panel in a reported opinion is binding on subsequent panels.").  Because we are bound by Fauber, and in any event do not question its wisdom, we reiterate that it is proper for a federal district court sitting in diversity to award delay damages to a plaintiff under Rule 238 of the Pennsylvania Rules of Civil Procedure.

        B.  Did Plaintiff Cause Delay?

        Second, Owens-Corning maintains that Kirk was responsible for the delay because she filed simultaneous federal and state court actions and additionally failed to make an application to remand the federal action from the multidistrict docket when settlement negotiations proved fruitless.

        Our review of the applicability of Rule 238 in a diversity case is plenary.  Fauber, 876 F.2d at 329.  Rule 238 of the Pennsylvania Rules of Civil Procedure states in relevant part:

> (a)(1) At the request of the plaintiff in a civil action seeking monetary relief for . . . death[,] . . . damages for delay shall be added to the amount of compensatory damages awarded against each defendant . . . found to be liable to the plaintiff in the verdict of a jury . . . .
>        (2) Damages for delay shall be awarded for the period of time
>              (i) in an action commenced before August 1, 1989, from the date the plaintiff first filed a complaint or from a date one year after the accrual of the cause of

action, whichever is later, up to the date of the . . . verdict . . . .
(3) Damages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded.
(b) The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,
(1) after which the defendant has made a written offer of
(i) settlement in a specified sum with prompt cash payment to the plaintiff, or
(ii) a structured settlement underwritten by a financially responsible entity, and continued that offer in effect for at least ninety days or until commencement of trial, whichever first occurs, which offer was not accepted and the plaintiff did not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of either the specified sum or the actual cost of the structured settlement plus any cash payment to the plaintiff; or
(2) during which the plaintiff caused delay of the trial.

Pa. R. Civ. P. 238 (1988) (emphasis added).

According to the plain language of the rule, a defendant must pay delay damages unless the delay falls within the excludable time as set forth in the rule. Owens-Corning concedes that it did not make a settlement offer which would satisfy the rule. Thus, the only other way for the defendant to be relieved from paying delay damages would be if the plaintiff caused the delay.

According to Owens-Corning, but for the plaintiff's strategic decision to file a federal asbestos action, the matter

could have been resolved long ago in state court. Here, Kirk would have been forced to abandon her remedy in federal court and seek relief only in the state forum. To adopt the rule of law as advocated by Owens-Corning, we would be required to hold that delay is per se attributable to a plaintiff anytime a plaintiff files a diversity action in federal court when a suitable state forum exists. Nothing in Rule 238 contemplates that a plaintiff must forgo any rights in order to be entitled to delay damages, and we are unwilling to adopt such a proposition.

In support of its argument that Kirk was responsible for the delay in failing to request a remand from the multidistrict docket, Owens-Corning relies on Babich v. Pittsburgh & New England Trucking Co., 386 Pa. Super. 482, 563 A.2d 168 (Pa. Super. Ct. 1989). In that case, the plaintiff's motion for delay damages pursuant to Rule 238 was denied by the trial court and plaintiff appealed. Babich, 386 Pa. Super. at 487, 563 A.2d at 171. In assessing who was responsible for the almost seven year delay between the commencement of suit and the jury verdict, the court observed:

> [T]he chief reasons for delay in this case cannot be attributed to defendants. [One of the defendants] filed a Chapter 11 bankruptcy in federal court six months after [plaintiff's] complaint was filed and [plaintiff] did not successfully obtain relief from the automatic stay until approximately two years and four months later despite cooperation from counsel for the bankruptcy and counsel for the insurance company. The other primary delay in the case was [plaintiff's] failure to place the case at issue in a speedy fashion. [Plaintiff] fails to point to any delay attributable to

defendants and we find none upon review of
the record.

Babich, 386 Pa. Super. at 487, 563 A.2d at 171.

Owens-Corning argues that because Kirk did not seek a remand from the multidistrict docket, she failed to obtain relief from the MDL stay just as the plaintiff in Babich failed to obtain relief from the automatic stay.  Owens-Corning's reliance on Babich is misplaced.  In that case plaintiff could have sought relief and moved the trial along, because opposing counsel was cooperating with and assisting counsel.  Here, however, according to Judge Weiner's Pretrial Order, the case could be remanded for trial only if there was a finding that the defendant was acting in bad faith during the settlement negotiations.  To the extent that Owens-Corning is found to have acted in bad faith, this would militate against a finding that delay was caused by the plaintiff.


C.  Is Delay Not Caused By Defendant Excludable?

Third, Owens-Corning argues that because the delay was caused by the MDL Order, it offends traditional notions of fair play and due process to make a defendant pay for another's delay. Owens-Corning asks that the award of delay damages be recalculated and further maintains that it is unconstitutional to impose delay damages on it for this time period because it was never acting in bad faith and the delay was caused by the court. Were we to adopt the rule of law as articulated by Owens-Corning, we would have to redraft Rule 238(b)(2) to state "during which

the defendant did not cause the delay of the trial," instead of "during which the plaintiff caused delay of the trial."  We are not so inclined and we find that the plaintiff caused no delay of the trial.

Owens-Corning also argues that notwithstanding the language of the rule, requiring it to pay for delay caused by the judiciary is a violation of due process.  Owens-Corning fails to comprehend the theory underlying Rule 238.  Delay damages merely compensate a plaintiff for money that he or she would have earned on the award if he or she had promptly received it.  Costa v. Lauderdale Beach Hotel, 534 Pa. 154, 160, 626 A.2d 566, 569 (Pa. 1993).  The rule also functions to prevent a defendant from being unjustly enriched by keeping interest that could be earned during the litigation process on what is essentially the plaintiff's money.  Id. n.6.  We find no merit to Owens-Corning's argument that delay damages violate due process in this instance.  Accordingly, we find no error in the district court's decision to award delay damages to the plaintiff.

## VI. Conclusion

The seating of two jurors in this matter was error, as was allowing into evidence the prior testimony of a witness in an unrelated state court trial and permitting the introduction into evidence of an answer to an interrogatory by a settled co-defendant.  We will reverse the judgment of the district court and remand the matter to the district court for a new trial.  Costs taxed against appellees.